UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION



ELAINE BURGESS, )
 )
 )
    Plaintiff, )
 )
vs. ) Civil Action No. CV-97-S-0437-NE
 )
COMMERCIAL CREDIT CORPORATION, )
AMERICAN HEALTH AND LIFE )
INSURANCE COMPANY, and )
DAVID HARGIS, )
 )
    Defendants. )

ENTERED

APR 28 1997

## MEMORANDUM OPINION

This action is before the court on motions to compel arbitration and stay this proceeding filed by defendants Commercial Credit Corporation ("Commercial Credit") and American Health and Life Insurance Company ("American Health"). This court prematurely granted Commercial Credit's motion by order entered February 26, 1997, but vacated that order on March 26, 1997, to allow plaintiff adequate opportunity to be heard. Upon consideration of the pleadings, briefs, and oral arguments of counsel, this court nevertheless concludes that both motions are due to be granted.

### I. STATEMENT OF CASE

Plaintiff engaged in a total of four loan transactions with Commercial Credit.[1] In each instance, she borrowed a greater amount than before. The fourth and final loan agreement is the crux of the present controversy.

---

[1] Commercial Credit claims that plaintiff entered into the fourth loan agreement with its successor corporation, Commercial Credit of Alabama, Inc. Yet, that document refers to "Lender" as "Commercial Credit Corporation" not "Commercial Credit of Alabama, Inc." (Plaintiff's Exhibit D.)

The first loan occurred on December 21, 1994, when plaintiff borrowed $567.26 from Commercial Credit. (Plaintiff's Exhibit A.) Three months later, on March 15, 1995, plaintiff entered into a second loan agreement with Commercial Credit; the proceeds of that transaction were used, first, to pay plaintiff's balance from the first loan, and then advanced plaintiff an additional $999.95. Plaintiff then owed Commercial Credit a total of $1,532.07. (Plaintiff's Exhibit B.)

On April 6, 1995, plaintiff entered into a third loan agreement with Commercial Credit. That agreement paid plaintiff's existing balance under the previous loan agreement, and also provided funds for the payment of some $4,019.10 in debts that plaintiff owed third-parties. Plaintiff then owed Commercial Credit a total of $6,653.14. (Plaintiff's Exhibit C.) Plaintiff missed two consecutive monthly payments on the third loan agreement in 1995 and, therefore, her loan was in default. (Affidavit of Michael Tarrant, ¶ 3.)[2]

On November 29, 1995, plaintiff entered into the fourth and final loan agreement with Commercial Credit. The agreement allowed plaintiff to skip three monthly payments, and, reduced the amount of her monthly payment. The refinancing agreement was memorialized in a 4-page "Disclosure Statement - Note and Security Agreement" which included an "Arbitration Provision" that provides, in pertinent part:

---

[2] Michael Tarrant is a branch manager of the Birmingham, Alabama office of Commercial Credit of Alabama, Inc.

2

**READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION**

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions apply:

"You" or "Your" means any or all of Borrower(s), and their heirs, survivors, assigns, and representatives.

"We" or "Us" means Lender, its assignees, together with ... affiliates, ... [and] successors.

"Credit Transaction" means any one or more past, present, or future extensions, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything that concerns:

> this Provision;
>
> any Credit Transaction;
>
> any past, present, or future insurance, service, or product that is offered in connection with a Credit Transaction;
>
> any documents or instruments that contain information about any Credit Transaction, insurance, service, or product; and
>
> any act or omission by any of Us regarding any claim.

**Agreement to Arbitrate Claims.** Any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act; ...

Examples of Claims that are governed by this Agreement include those involving:

- The Truth in Lending Act and Regulation Z

...

3

- State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts;

- Any other federal or state consumer protection statute or regulation;

- Your execution of this Provision and/or willingness to be bound by its terms and provisions; or

- Any dispute about closing, servicing, collecting or enforcing a Credit Transaction.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction.

**Claims Excluded from Arbitration.** You agree that the following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate.

- Any action to effect a foreclosure;

. . .

- Any claim where We seek damages or other relief because of Your default under the terms of the Credit Transaction;

. . .

Enforcement of this section shall not waive the right to arbitrate any other Claim.

(Plaintiff's Exhibit D, at 3 (emphasis in original).) The arbitration provision covers pages three and four of the refinancing agreement. Plaintiff initialed her name within the arbitration provision on the third page, and signed the fourth page directly below the following language:

> **READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

(*Id.*, 4 (emphasis in original).)

4

On February 10, 1997, plaintiff commenced this action in the Circuit Court of Cullman County, Alabama, asserting that Commercial Credit misrepresented several of the terms of the agreement, that Commercial Credit's employees harassed plaintiff and were abusive in their collection efforts, and that Commercial Credit intentionally took advantage of plaintiff's unfortunate circumstances (*i.e.*, she had a sick daughter, and recently had been through extreme emotional and financial hardship). On February 21, 1997, defendants removed the action to this court. Soon thereafter, defendants Commercial Credit and American Health filed motions to compel arbitration and to stay this proceeding.

## II. STANDARD OF REVIEW

A contract which contains an agreement to arbitrate disputes falls within the ambit of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, if it involves interstate commerce. The transaction at issue clearly involves interstate commerce. Indeed, the arbitration provision at issue states:

> **You understand and acknowledge by signing Your name to this Provision that: ... the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act. 9 U.S.C. §§ 1-9...**

(Plaintiff's Exhibit D, at 4 (emphasis in original).) Commercial Credit also has presented evidence that: (1) its parent corporation is located in Maryland; (2) the funds for Alabama loans come from capital sources in other states; (3) it employs persons in various states and purchases supplies in interstate commerce; and, (4) it is subject to regulation by federal law. (Affidavit of Ken Dennis,

5

a branch manager of Commercial Credit of Alabama, Inc., ¶¶ 3-4.) Thus, Commercial Credit has sufficiently established that plaintiff's credit transaction involved interstate commerce.

The FAA represents a congressional declaration of a liberal federal policy in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*, 460 U.S. at 24-25, 103 S.Ct. at 941.

Pursuant to the FAA, a district court, upon being "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3. In addition, a party who is aggrieved by an alleged failure to arbitrate can petition the court to compel arbitration. 9 U.S.C. § 4.

### III. DISCUSSION

Plaintiff presents three claims that relate to the "arbitrability" of this dispute. "The 'arbitrability' of a dispute comprises the questions of (1) whether there exists a valid agreement to arbitrate at all under the contract in question ..., and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *National Union Fire Insurance Company of Pittsburgh v. Belco Petroleum Corporation*, 88 F.3d 129, 135 (2d Cir. 1996).

6

Plaintiff's complaint presents ten claims, for: (1) violations of Alabama's mini-code; (2) breach of contract; (3) fraud; (4) fraudulent suppression; (5) negligent training and supervision; (6) conversion; (7) outrage; (8) invasion of privacy; (9) duress; and, (10) violation of the Truth in Lending Act. Plaintiff concedes that all claims are within the scope of the broad language of the arbitration provision contained in her November 29, 1995 refinancing agreement (Plaintiff's Brief, at 14), but she contests the validity of both the refinancing agreement and its arbitration provision. She claims that: (1) the entire agreement is unenforceable, because it was exacted by means of fraud and duress; (2) the entire agreement is unconscionable, because it is a contract of adhesion in which Commercial Credit exerted unequal bargaining power; and, (3) the arbitration provision is unenforceable, because it lacks mutuality of obligation and is therefore unconscionable.

**A. Was the Refinancing Agreement Exacted by Means of Fraud and Duress?**

During oral arguments and again in brief, plaintiff's counsel argued that the "entire agreement" is void, because it was exacted by means of fraud and duress.[3] (Plaintiff's Brief, at 2, 14.)  In

---

[3] Plaintiff suggests that she can make two separate and distinct arguments; one toward the entire contract and one toward the arbitration provision alone. She reasons that "[t]he fact that the arbitration agreement is contained within another document and that plaintiff might claim fraud, duress or unconscionability as to the entire agreement is a distinction without a difference in this case." (Plaintiff's Brief, at 14.) The United States Supreme Court holds, however, that arguing to the validity of an entire contract or to the validity of an arbitration agreement within a contract is a distinction with a difference. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967). It is obvious to this

7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 & n.11 (5th Cir. 1981), the Former Fifth Circuit held that a plaintiff's claims that she signed a contract, which included an arbitration provision, under duress, undue influence, confusion, and coercion, were to be decided by an arbitrator, because those claims went to the formation of the entire contract, and not to the arbitration provision alone.[4] *See also Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986)(applying holding in *Merrill Lynch*). In so holding, the court followed the Supreme Court's command that:

> if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the "making" of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967)(footnote omitted). Plaintiff's fraud and duress claims relate to the validity of the contract generally and, therefore, are properly reserved for the arbitrator to decide.

Contrary to plaintiff's assertion, that determination is not affected by the Supreme Court's decision in *First Options of*

---

court that plaintiff's counsel, in attempt to avoid the conclusion compelled by *Prima Paint*, has attempted to characterize several of her arguments relating to the enforceability of the entire agreement (*i.e.*, fraud, duress, unconscionability of a contract of adhesion), as relating to the enforceability of the arbitration provision alone.

[4] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, ___, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995), where the Court held that "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." Thus, the Court cautioned that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so.'" *Id.*, 514 U.S. at ___, 115 S.Ct. at 1923 (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986)). In this case, there is such clear and unmistakable evidence. The arbitration provision at issue expressly provides that claims involving "Your execution of this Provision and/or willingness to be bound by its terms and provisions" are subject to arbitration. (Plaintiff's Exhibit D, at 3.) Plaintiff concedes "the arbitration agreement contained extremely broad language which would suggest that the parties agreed to have everything, including the issue of arbitrability, determined by an arbitrator." (Plaintiff's Brief, at 14.)

Thus, the clear and unmistakable evidence in this case suggests the parties intended to submit arbitrability issues, such as those of fraud or duress, to an arbitrator.

**B. Is the Entire Agreement Unconscionable Because it is a Contract of Adhesion?**

Plaintiff contends that "the loan agreement signed by plaintiff" is unconscionable, because Commercial Credit exerted unequal bargaining power. (Plaintiff's Brief, at 21.) Under *Prima Paint*, a claim of unconscionability in the formation of the

9

arbitration agreement <u>alone</u> is a matter for judicial consideration; a claim of unconscionability in the contract <u>as a whole</u>, however, is to be resolved in arbitration. *Prima Paint Corp.*, 388 U.S. at 403-04, 87 S.Ct. at 1805-06. Plaintiff's allegation that the loan agreement is a contract of adhesion goes to the enforceability of the contract as a whole, not the arbitration provision alone. Therefore, a determination as to whether plaintiff's loan agreement constitutes a contract of adhesion is to be resolved by an arbitrator, not the court.

**C. Is the Arbitration Provision Unconscionable Because it Lacks Mutuality of Obligation?**

Plaintiff presents one claim that challenges the validity of the arbitration provision itself, and not the loan agreement as a whole: i.e., the arbitration provision lacks mutuality of obligation. Plaintiff principally relies on two cases in support of her argument: *Hull v. Norcom*, 750 F.2d 1547 (11th Cir.), *reh'g denied*, 757 F.2d 287 (11th Cir. 1985); and, *Northcom v. James*, 1997 WL 7715 (Ala. Jan. 10, 1997).

Plaintiff's reliance on *Hull* is misplaced. As United States District Judge James H. Hancock noted, "[t]he mutuality doctrine in *Hull* was based entirely on unique (and now defunct) New York law, and finds no counterpart in Alabama contract law." *Latifi v. Sousa*, 1996 WL 735260, *6 (N.D. Ala. Dec. 23, 1996). Thus, plaintiff's argument must stand or fall on the reasoning in *Northcom*.

10

The enforceability of arbitration agreements is governed by state law, so long as that law treats arbitration provisions the same as contracts generally.

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress's intent.

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, __, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995).

State laws, whether legislative or judicially created, that single out arbitration agreements for disfavored treatment are preempted by the FAA.

> [S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. ... A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.

*Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527 n.9, 96 L.Ed.2d 426 (1987).

*Doctor's Associates, Inc. v. Casarotto*, __ U.S. __, __, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996), represents a prime example of the Supreme Court's determination to make sure arbitration provisions are "placed upon the same footing as other contracts." *Id.*, __ U.S. at __, 116 S.Ct. at 1656. In *Casarotto*,

11

the Supreme Court reviewed a Montana statute that required "[n]otice that a contract is subject to arbitration" be "typed in underlined capital letters on the first page of the contract." *Id.*, __ U.S. at __, 116 S.Ct. at 1654. The Court reiterated the principle first stated in *Allied-Bruce* that "[c]ourts may not ... invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Id.*, __ U.S. at __, 116 S.Ct. at 1656. Then, the Court determined that the Montana statute was inconsonant with, and therefore preempted by, § 2 of the FAA.[5] In doing so, the Court noted that by enacting § 2 of the FAA, "Congress precluded the States from singling out arbitration provisions for suspect status." *Id.*, __ U.S. at __, 116 S.Ct. at 1656.

In *Northcom v. James*, 1997 WL 7715 (Ala. Jan. 10, 1997), the Alabama Supreme Court held that an arbitration provision was unenforceable because it lacked "mutuality of obligation." *Id.*, at *4. The arbitration provision in *Northcom* (much like the arbitration provision in this case) required the sellers to submit any disputes with the buyer to arbitration, but allowed the buyer in principal situations in which it might seek relief to bring actions for equitable relief or damages.

The holding in *Northcom* represents an "entirely new animal in the history of Alabama contract law." *Northcom*, 1997 WL 7715, at

---

[5] Section 2 provides, in pertinent part: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

12

*5 (Hooper, Chief J., dissenting). Before the birth of that aberrational specie, Alabama law only required mutuality, in the sense that there must be some consideration flowing from both sides when the contract is viewed as a whole. *See Marcrum v. Embry*, 291 Ala. 400, 282 So.2d 49 (1973). Now, the Alabama Supreme Court seeks to add a novel requirement to the law: that under arbitration provisions only, there must also be "mutuality of remedies." *Northcom*, 1997 WL at *5 (J. Maddox, dissenting).

*Northcom* clearly "singl[es] out arbitration provisions for suspect status," by requiring a heightened consideration in the form of "mutuality of remedies" that it does not require for any other contractual provisions. *Casarotto*, __ U.S. at __, 116 S.Ct. at 1656; *see also Perry*, 482 U.S. at 492 n.9, 107 S.Ct. at 2527 n.9 ("a court [may not] rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable"). Thus, applying the holding of *Northcom* would "undermine the goals and policies of the FAA." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). This court accordingly concludes that *Northcom* is inconsonant with and, therefore, preempted by the FAA.

Now that this court has removed Alabama's state law that singles out arbitration agreements for disfavor from consideration, this court may examine the pre-existing general contract law of Alabama to determine if there is mutuality of obligation under

13

plaintiff's arbitration agreement. As the Alabama Supreme Court stated before its *Northcom* deviation, the doctrine of mutuality

> does not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract.

*Marcrum v. Embry*, 291 Ala. 400, 282 So.2d 49 (1973). Plaintiff has not argued that her loan agreement lacked consideration as a whole. Thus, under Alabama general contract law, the consideration provided by Commercial Credit under the agreement as a whole (*i.e.*, the loan proceeds), also constitutes sufficient consideration to support plaintiff's promise to submit certain claims to arbitration.

### D. Is American Health Entitled to Compel Plaintiff to Submit to Arbitration?

The Eleventh Circuit allows for non-signatories to bind a plaintiff to arbitration where the plaintiff's claims against the non-signatory are "intimately founded in and intertwined with the underlying contract obligations." *McBro Plainning & Development Co.*, 741 F.2d 342, 344 (11th Cir. 1991)(quoting *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836, 841 n.9 (7th Cir. 1981)). Plaintiff concedes "if the arbitration provision was valid and enforceable when compelled by Commercial Credit, then plaintiff concedes that American Health may be entitled to arbitrate claims asserted against it as well." (Plaintiff's Brief, at 31.) This court has already concluded that

14

the arbitration provision is valid and enforceable as to Commercial Credit.

Also, American Health presents the affidavit of one of its senior vice president, who states that American Health is an affiliate of Commercial Credit. (Affidavit of Dianna L. Cook, ¶ 2.) The "Arbitration Provision" in plaintiff's loan agreement includes any subsidiary or affiliate of the lender within its definition of "We" and "Us."[6] (Plaintiff's Exhibit D, at 3.) Thus, American Health, as an affiliate of Commercial Credit, is entitled to pursue arbitration under the arbitration provision.

### III. CONCLUSION

For the foregoing reasons, the motions to compel arbitration and stay this proceeding filed by defendants Commercial Credit and American Health are due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

**DONE** this __28th__ day of April, 1997.

_____
United States District Judge

---

[6]The "Arbitration Provision" also states that the lender's employees are included within the definition of "We" and "Us." Plaintiff alleges in her complaint that defendant David Hargis is an employee of Commercial Credit. (Plaintiff's Complaint, ¶ 4.) Thus, plaintiff's claims against defendant David Hargis must also be submitted to arbitration.

15